# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOSEPH JAMES PETTIS,                          Case No. 1:11-cv-883
      Petitioner,

                                        Beckwith, J.

      vs.                                       Bowman, M.J.

WARDEN, LEBANON                               **REPORT AND**
CORRECTIONAL INSTITUTION,                     **RECOMMENDATION**
      Respondent.

Petitioner, an inmate in state custody at the Lebanon Correctional Institution, has filed a

pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before

the Court on the petition and respondent's return of writ.  (Docs. 4, 8).

## I.  FACTUAL BACKGROUND

In assessing petitioner's sufficiency of the evidence claims on appeal, the Ohio Court of

Appeals provided the following summary of the facts that led to petitioner's rape and aggravated

burglary convictions and sentence:

> Here, the victim testified that she awoke in the middle of the night when she heard
> a doorknob rattling.  She sat up in bed and saw Pettis in her bedroom trying to
> open her bedroom door with what looked like a coat hanger.  Although there were
> no signs of forced entry, the victim testified that she believed that Pettis had
> entered through her first-floor bedroom window, which she had left open because
> it was hot that night.
>
> . . .
>
> When she awoke, she made a noise, and Pettis walked quickly towards her and
> told her not to scream.  As he was walking towards her, Pettis took off his belt.
> The victim testified that she was "terrified" and could not get enough air in her
> lungs to scream.  She said that she put her hands out in front of her to stop him
> from getting closer to her.  She said to Pettis, "I'm only 17, I'm a virgin, don't do
> this."  The victim also testified that Pettis covered her head with a shirt and then
> wrapped his belt around her neck to secure the shirt.  He then moved the shirt so
> her mouth was exposed and put his penis inside her mouth.  He ejaculated and

then placed his hands over the victim's mouth, ordering her to swallow the semen. He then removed her underwear, held her legs down, and performed cunnilingus. He then placed his fingers in the victim's vagina. Pettis eventually left the victim when he heard the victim's landlord, who lived above the victim, moving around. The victim stated that she thought "screaming would get me hurt."

(Doc. 8, Ex. 11, pp. 2-3). Although the victim testified that she could not positively identify petitioner at trial, petitioner's DNA was found on the victim's body.[1] (*See id.* at 4).

## II. PROCEDURAL HISTORY

### State Trial and Appellate Proceedings

On May 30, 2008, the Hamilton County, Ohio grand jury returned an indictment charging petitioner with one count of aggravated burglary, in violation of Ohio Rev. Code § 2911.11(A)(1); and three counts of rape, in violation of Ohio Rev. Code § 2907.02(A)(2). (Doc. 8, Ex. 1). Petitioner entered a not guilty plea to all charges. (Doc. 8, Ex. 2).

On January 14, 2009, after a jury trial, petitioner was found guilty of all charges. (Doc. 8, Ex. 4). Petitioner filed a motion for a new trial on January 22, 2009. (Doc. 8, Ex. 5). On the same day, the trial court overruled petitioner's motion. (Doc. 8, Ex. 6). Petitioner was sentenced to a total aggregate sentence of forty years imprisonment. (Doc. 8, Ex. 7).

Through different counsel, petitioner filed a notice of appeal to the Ohio Court of Appeals on February 18, 2009. (Doc. 8, Ex. 8). Petitioner raised two assignments of error for review and argument:

> 1. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ENTERED A CONVICTION BASED UP ON INSUFFICIENT EVIDENCE (T.d. 48, T.p. 373-374).

---

[1]  At trial, a DNA analyst testified that the DNA profile found on the victim "would be expected to occur in 1 in 312 trillion 800 billion Caucasian or 1 in 1 trillion 182 billion of a African-American individuals." (Doc. 8, Transcript p. 261).

Issues for Review and Argument
Is there sufficient evidence of aggravated burglary and rape when the evidence lacks definitive proof of the force, stealth, or deception needed for burglary and the force/threat of force needed for rape?

2. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ENTERED A CONVICTION THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (T.d. 48, T.p. 373-374).

Issues for Review and Argument
Are convictions for aggravated burglary and rape against the manifest weight of the evidence where the accused presents an alternate inference from the facts?

(Doc. 8, Ex. 9). On February 10, 2010, the Ohio Court of Appeals overruled the assignments of error and affirmed the judgment of the trial court. (Doc. 8, Ex. 11).

Petitioner does not appear to have appealed the appellate court decision to the Ohio Supreme Court.

**Application to Reopen Appeal**

On April 5, 2010, petitioner filed a pro se application to reopen his direct appeal, pursuant to Ohio App. R. 26(B). (Doc. 8, Ex. 12). Therein, petitioner argued that his appellate attorney was ineffective for failing to raise the following assignments of error:

1. THE PROSECUTION ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT-APPELLANT WHEN IT WITHHELD EXCULPATORY EVIDENCE WITHIN ITS POSSESSION FROM THE DEFENDANT-APPELLANT AT TRIAL.

Issues for Review and Argument
Did the prosecutor violate appellant's Fourteenth Amendment right to due process and a fair trial when the prosecutor failed to disclose to the defense, prior statements made by the victim to the police, which contained valuable impeachment evidence involving inconsistencies in the victim's account of the incident?

2. THE PROSECUTION ERRED TO THE SUBSTANTIAL PREJUDICE

3

> OF DEFENDANT-APPELLANT WHEN IT KNOWINGLY PRESENTED PERJURED TESTIMONY AT TRIAL.
>
> Issues for Review and Argument
> Did the State violate the appellant's rights to due process and a fair trial when the prosecutor knowingly introduced and/or allowed trial testimony that it knew or should have known was false and allowed it to go uncorrected when it appeared?

(Doc. 8, Ex. 12).  On August 16, 2010, the Ohio Court of Appeals denied petitioner's application to reopen.  (Doc. 8, Ex. 15).

On October 1, 2010, petitioner filed a pro se notice of appeal in the Ohio Supreme Court. (Doc. 8, Ex. 16).  In his memorandum in support of jurisdiction, petitioner raised as propositions of law the same claims that he raised as assignments of error in his 26(B) application.  *See id.* On December 15, 2010, the Ohio Supreme Court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question."  (Doc. 8, Ex. 17).

### Federal Habeas Corpus

Petitioner commenced the instant federal habeas corpus action on December 6, 2011. (Doc. 1).  Petitioner raises two grounds for relief in his petition:

**GROUND ONE**:

THE PROSECUTION ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT/PETITIONER WHEN IT WITHHELD EXCULPATORY EVIDENCE WITHIN ITS POSSESSION FROM THE DEFENDANT-APPELLANT AT TRIAL.

**GROUND TWO**:

THE PROSECUTION ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT/PETITIONER WHEN IT KNOWINGLY PRESENTED PERJURED TESTIMONY AT TRIAL.

(Doc. 4).

Respondent opposes the petition.  (Doc. 8).  In the return of writ, respondent contends that petitioner procedurally defaulted and waived his grounds for relief by failing to present the claims to the Ohio courts.  *Id.* at 8.

## III.    THE PETITION SHOULD BE DENIED

Petitioner raises two grounds for relief in his habeas petition.  In Ground One, he claims that the prosecutor failed to disclose "prior statements made by the alleged victim to Detectives Daniel Coates and Linda Day, of the Cincinnati Police Department which contained valuable impeachment evidence involving inconsistencies in the alleged victim's account of the incident." (Doc. 4, p. 5).  He contends that the failure to disclose constituted prosecutorial misconduct and deprived him of his right to a fair trial.  *Id.*  In Ground Two, petitioner claims that the prosecutor knowingly presented perjured testimony.  *Id.* at 8.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based

review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim in the state court may preclude federal habeas review if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision.  *See Harris,* 489 U.S. at 260-62.  The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner fails to comply with a state procedural rule that required him to have done something at trial to preserve the issue for appellate review.  *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell,* 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[2]  In cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim.  *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied.  *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009).  To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases."  *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

---

[2] In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief.  *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  *Harris,* 489 U.S. at 263 n.9.

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "actual prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the instant case, petitioner failed to present the claims raised in Grounds One and Two on direct appeal to the Ohio Court of Appeals.  (*See* Doc. 8, Ex. 9).  Thus, petitioner procedurally defaulted the claims asserted in these grounds for relief.  Ohio law provides that an issue not raised on direct appeal is barred by the doctrine of *res judicata*.  *See State v. Perry*, 226 N.E.2d 104, 105-06 (Ohio 1967) (syllabus); *State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994) (holding that *res judicata* stops post-conviction relief for claims that could have been raised on direct appeal).  The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata*.  *See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994) (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 757 F.2d at

100 (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

Although petitioner raised the underlying trial error claims in Grounds One and Two in connection with his Rule 26(B) application to reopen his direct appeal by asserting appellate counsel was ineffective for failing to bring the underlying claims as assignments of error, his Rule 26(B) application did not preserve the merits of those claims for habeas review. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008). "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Id.* at 312 (quoting *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005)). Consequently, by failing to raise the underlying trial error claims asserted in Grounds One and Two on direct appeal to the state courts, petitioner has waived the claims absent a showing of cause for his default and actual prejudice as a result of the alleged errors, or that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750. *See also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner contends that his failure to raise the claims on direct appeal was the result of the ineffective assistance of counsel on appeal. He claims that his appellate brief was prepared by a court appointed attorney and that, despite counsel's knowledge of the claims raised in his habeas petition, appellate counsel insisted on not raising the issues on direct appeal. (Doc. 4, pp. 7, 10).

Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted.  *See Murray,* 477 U.S. at 488-89.  *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  In order for the ineffective assistance of appellate counsel to serve as cause to excuse a procedural default petitioner must show that his appellate counsel's failure to raise the claims rose to the level of a constitutional violation under *Strickland v. Washington*, 466 U.S. 668 (1984).  *McFarland v. Yukins,* 356 F.3d 688, 699 (6th Cir. 2004).  Under *Strickland*, petitioner must demonstrate a reasonable probability that inclusion of the issue would have changed the result of the appeal.  *McFarland*, 356 F.3d at 699.  Accordingly, in evaluating petitioner's ineffective assistance of appellate counsel claims, the Court must assess the strength of the claims that appellate counsel failed to raise.  *See Wilson v. Parker,* 515 F.3d 682, 707 (6th Cir. 2008).  "If there is a reasonable probability that [the petitioner] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel."  *Id.* at 700.

In denying petitioner's application to reopen his appeal, the Ohio Court of Appeals found that appellate counsel was not ineffective for failing to raise the now defaulted claims on appeal:

> An application to reopen an appeal must be granted if the applicant establishes "a 'genuine issue' as to whether he had a 'colorable claim' of ineffective assistance of counsel on appeal."  The United States Supreme Court's decision in *Strickland v. Washington* provides the standard for determining whether the applicant was denied the effective assistance of appellate counsel.  The applicant must prove "that his counsel [performed] deficient[ly] [in] failing to raise the issues he now presents and that there was a reasonable probability of success had [counsel] presented those claims on appeal."

10

Pettis contends that he was denied the effective assistance of counsel because his appellate counsel failed to present assignments of error contending that Pettis's rape and aggravated-burglary convictions had been the product of the state's failure to disclose in discovery the victim's statements to law-enforcement officers and of the state's knowing elicitation at trial of testimony by the victim that the undisclosed statements showed to be perjured.

Appellate counsel's performance in failing to assign these matters as error cannot be said to have been deficient. Pettis was not denied a fair trial by the state's failure to disclose the victim's statements, because the statements were not "material," i.e., they could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict[s]." And Pettis's assertion that his convictions had been the product of perjured testimony knowingly elicited by the prosecution fails in its central premise, because the victim's testimony was not demonstrably false.

Pettis has thus failed to sustain his burden of demonstrating a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel on appeal. Therefore, the court denies his application to reopen this appeal.

(Doc. 8, Ex. 15, pp. 1-2) (internal citations omitted).

The undersigned agrees with the Ohio Court of Appeals' assessment of petitioner's ineffective assistance of appellate counsel claims.

Petitioner first contends that appellate counsel was ineffective for failing to raise the prosecutorial misconduct claim presented in Ground One of the petition. According to petitioner, the prosecution failed to disclose prior statements made by the victim in two police interviews following the incident. He claims that the interviews contained "valuable impeachment evidence involving inconsistencies in the alleged victim's account of the incident." (Doc. 4, p. 5). Specifically, petitioner contends that the victim's accounts of the incident were inconsistent with regard to whether petitioner threatened or used physical force against the victim. *See id.* at 6, 8.

11

To establish a *Brady* violation, the petitioner has the burden of demonstrating that (1) the prosecution suppressed evidence, either willfully or inadvertently; (2) the evidence is favorable to the accused, either because it is exculpatory or because it is impeaching; and (3) the suppressed evidence is material to guilt or punishment.  *Moore v. Illinois,* 408 U.S. 786, 794-95 (1972); *see also Strickler v. Greene,* 527 U.S. 263, 281-82 (1999); *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000).

Evidence is "material" within the meaning of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley,* 473 U.S. 667, 682 (1985); *see also Strickler,* 527 U.S. at 280 (citing *Kyles v. Whitley,* 514 U.S. 419 (1995)).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Bagley,* 473 U.S. at 682.  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  *United States v. Agurs,* 427 U.S. 97, 109-10 (1976). This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991) (citing *Agurs,* 427 U.S. at 112 n.20).

After review of the record in this case, the undersigned is convinced that the interviews were not material.  As an initial matter, there does not appear to be any significant difference between the victim's trial testimony and the police interviews regarding whether physical force was used or threatened.  During the trial, the victim testified that she did not scream during the incident out of fear for her safety.  (Doc. 8, Transcript pp. 114).  She indicated that she was

12

uncertain anyone would hear her if she were to scream and that she feared petitioner might hurt or kill her if she did.  *Id.* at 117, 152.  Although the victim stated that petitioner told her to be quiet, she testified that he did not threaten or use physical force against her.  *Id.* at 141-42.

Petitioner first contends that the undisclosed police interviews were inconsistent with regard to whether he threatened force on the victim.  The victim was interviewed on two occasions prior to giving her trial testimony.  On August 7, 2003, on the same day as the incident and more than five years prior to trial, the victim was interviewed by Detectives Coats and Fassnacht.  During the interview, the victim indicated that petitioner told her not to scream and that he would not hurt her.  (Doc. 8, Coats Interview p. 3, 51).  She further indicated that the intruder did not threaten violence or use physical force against her.  *Id.; see also id.* at 43 ("No, he didn't hit me or smack me around or anything." ).  Over four years later, on April 7, 2008, the victim was interviewed by Detective Linda Day.  In this interview, the victim again indicated that petitioner told her to be quiet and that "he never threatened to kill [her] or anything like that."  (Doc. 8, Day Interview p. 17; *See also id.* at 7).  Although, as petitioner points out, the victim initially stated that petitioner "told [her] he would strangle [her] if [she] didn't shut up," (Doc 8, Day Interview p. 7-8), the victim later indicated that she could not remember if petitioner said anything to her and that his willingness to strangle her was implicit in his putting the belt around her neck:

> He had the belt very tight around my neck, and he took his penis out, and he was about level with me, me sitting on the edge of the bed, and he just started pushing it in my face.  And I don't remember if he said anything to me, but he was tightening the belt.  And I was very clear what he was expecting me to do.
>
> And at that point he had the belt tight enough so I knew if I tried to do anything that he could strangle me with it.  And he had pretty much said when he put it

13

around my neck that he would, he would strangle me if I didn't shut up.  And he forced me to perform oral sex.  He held my hair in one hand and the belt in the other, and the shirt was gathered around my neck at that point.  And then he came in my mouth and he made sure I swallowed it.

*Id.* at 19-20.

Petitioner next contends that the victim's trial testimony was inconsistent with the victim's interview statement that "[h]e didn't use force on me."  (Doc. 4, p. 6).  Petitioner claims that the victim testified during trial that petitioner used force on her.  However, the portion of the trial testimony quoted by petitioner pertained to whether the victim consented to the encounter, not whether petitioner used physical force against her:

Q:     Did you consent to any of this?

A:     No.

Q:     Did he force you to do this?

A:     He did.

Q:     How did he force you if he doesn't say to you hey, do this or threaten you?

A:     Just with his body guiding me to do these things forcefully.

Q:     Okay.  And he was doing it forcefully?

A:     Yes.

(Doc. 8, Transcript p. 153).  Contrary to petitioner's claim, this testimony does not contrast the victim's interview statements that petitioner did not use physical force against her.

In any event, the undersigned is convinced that any discrepancies in the victim's accounts of the incident would not have altered the result of the trial.  At trial, the defense did not contend that petitioner was not in the victim's apartment, but instead argued that the encounter was

14

consensual. (*See* Doc. 8, Transcript pp. 299-300). However, in all three accounts of the incident the victim indicated that she awoke to find petitioner in her bedroom and that petitioner forced her to engage in sexual activity despite her pleas for him to stop and/or leave. (*See* Doc. 8, Transcript pp. 123-24; Coats Interview pp. 3-4; Day Interview pp. 19-22). Second, the victim's sister and a nurse examiner substantiated the victim's testimony that she did not consent. Her sister testified that the victim was hysterical following the incident and that she indicated that "someone came in and forced her to have oral sex." (Doc. 8, Transcript pp. 171-73). The nurse examiner further testified that the victim exhibited trauma consistent with a sexual assault. *Id.* at 238-39.

Finally, as respondent has argued in the return of writ, whether or not petitioner threatened to strangle the victim or used physical force upon her was not ultimately relevant to petitioner's guilt or innocence. Under Ohio Rev. Code § 2901.01(A)(1), force is defined as "any violence, compulsion or constraint physically exerted by any means upon or against a person or thing." Under Ohio law, "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *State v. Eskridge*, 526 N.E.2d 304, 306 (Ohio 1988). In this case, the victim testified that she was terrified and frozen upon seeing petitioner in her bedroom. (Doc. 8, Transcript p. 109; *see also* Transcript p. 111 ("I wasn't screaming or like trying to get up and run away. I was scared and I was going to do what he said.")). She further testified that petitioner put a belt around her neck, covered her face with a shirt, held her legs down, and performed sexual acts on her without her consent. Whether or not petitioner also threatened to strangle or used additional force against her would not have

impacted the outcome of the trial. Petitioner's contention that the discrepancies in the report might have caused the jury to discredit all of the victim's testimony is also insufficient to demonstrate that the interviews were material.[3] As noted above, the materiality analysis focuses on petitioner's guilt or innocence and the "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs,* 427 U.S. at 109-10.

After review of the entire record, the undersigned finds that disclosure of the police interviews would not have altered the outcome of the trial. Therefore, because petitioner's underlying *Brady* claim is without merit, counsel was not ineffective for failing to raise the meritless claim on appeal. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal."); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit.") (citation omitted). Accordingly, petitioner has not established cause for his procedural default of the underlying *Brady* claim alleged in Ground One of the petition.

Petitioner has likewise failed to establish cause for the procedural default of the prosecutorial misconduct claim raised in Ground Two of the petition because the underlying claim is also without merit. "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false

---

[3] Petitioner argues that "the prosecutor's error prevented the defense counsel from casting doubt on [the victim's] reliability as a witness. The discrepancy in the reports gave the defense counsel an opening for arguing that [the victim] had poor memory or was fabricating parts of her story in order to ensure conviction. Cross-examination that gave the jury reason to believe either of these alternatives might have caused it to discount all of [the victim]'s testimony." (Doc. 4, p. 5).

testimony could have affected the judgment of the jury." *Byrd v. Collins*, 209 F.3d 486, 517 (6th

Cir. 2000) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).  In order to establish a due

process violation based upon the introduction of perjured testimony, petitioner must show that

(1) the statement was false, (2) the statement was material, and (3) the prosecution knew it was

false.  *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citing *United States v.

O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986)).  "The burden is on the defendants to show that the

testimony was actually perjured, and mere inconsistencies in testimony by government witnesses

do not establish knowing use of false testimony." *Id.* (citing *United States v. Griley*, 814 F.2d

967, 971 (4th Cir. 1987)).  Petitioner must demonstrate that the statement was "indisputably

false," as opposed to being misleading.  *Byrd,* 209 F.3d at 517.

        In this case, petitioner's prosecutorial misconduct claim is without merit.  As the Ohio

Court of Appeals reasonably found, petitioner has made no showing that the testimony was

"indisputably false."  In addition, as stated above, petitioner also fails to establish that the

testimony regarding whether or not physical force was used or threatened was material.  Finally,

the inconsistencies alleged by petitioner do not establish that the prosecution knowingly used

perjured testimony.   Because the underlying perjured testimony claim is without merit, appellate

counsel was not ineffective for failing to raise the meritless claim.  Therefore, petitioner's

ineffective assistance of appellate counsel claim does not establish cause for his procedural

default of the perjured testimony claim raised in Ground Two of the petition.

        Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will

occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the

alleged errors "probably resulted in the conviction of one who is actually innocent."  *See*

*Murray,* 477 U.S. at 495-96.  *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498.  To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324.

Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327-28.  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329.  The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998).  *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998).  The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup,* 513 U.S. at 321.

Petitioner has failed to establish a credible claim of actual innocence under the *Schlup* standard as he has not supported his allegations of constitutional error with any new evidence of actual innocence.  Accordingly, the Court is unable to reach the merits of his claims.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* 513 U.S. at 316.  Therefore, petitioner has not demonstrated that his procedural defaults should be excused under the "fundamental

18

miscarriage of justice" exception.

Accordingly, in sum, the Court concludes that petitioner has procedurally defaulted his claims for relief in Grounds One and Two by failing to raise the claims on direct appeal. Because petitioner has not demonstrated "cause" for his procedural defaults or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, the undersigned concludes that petitioner has waived his claims for federal habeas relief.  Therefore, it is **RECOMMENDED** that petitioner's petition for writ of habeas corpus (Doc. 4) be **DENIED** with prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in Grounds One and Two, which this Court has concluded are waived and thus barred from review on a procedural ground, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[4]

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


     *s/ Stephanie K. Bowman*    
Stephanie K. Bowman
United States Magistrate Judge

---

[4] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief.  *See Slack*, 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOSEPH JAMES PETTIS,               Case No. 1:11-cv-883
      Petitioner,

                                      Beckwith, J.
     vs.                           Bowman, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
      Respondent.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21